UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDIN ADGUSTO CHACON,<br><br>    Plaintiff,<br><br>    v.<br><br>D. GALLIAN, sergeant; et al.,<br><br>    Defendants.<br>                                                    / | No. C 05-4880 SI (pr)<br><br>**ORDER DENYING SUMMARY JUDGMENT MOTION, REFERRING CASE TO MEDIATION PROGRAM, AND SCHEDULING TRIAL DATE** |

## INTRODUCTION

This case is now before the court for consideration of defendants' motion for summary judgment. For the reasons discussed below, the motion will be denied. The case will be referred to the mediation program and a new trial date will be set.

## BACKGROUND

This action concerns the medical care Edin Chacon received when he returned to Pelican Bay State Prison after having outpatient surgery. The following facts are undisputed unless otherwise noted:

Chacon had rectal bleeding and eventually was diagnosed as having internal hemorrhoids. On January 19, 2005, he was sent from Pelican Bay to Sutter Coast Hospital, where Dr. Polidore performed a hemorrhoidectomy. Chacon was returned to Pelican Bay that same day by about 1:00 p.m. with discharge instructions.

The "discharge instructions for going home" form he received from Sutter Coast Hospital listed two medicines for Chacon: a stool softener to be taken daily for two weeks and Motrin "600 mg. every 6 hrs. as needed x 7 days." Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment ("Opposition"), Exh. A.[1] On the portion of the form regarding "care of wound and dressing," there were no marks; on the portion of the form regarding "diet," the box marked "no restrictions" was checked and the patient was instructed to increase fluid intake as well as fruits and vegetables." Id. The form also instructed the patient to "call if: unrelieved pain, fever >101, excessive bleeding." Id. The form did not instruct that the patient be provided with gauze pads, but Chacon stated that he was told by Dr. Polidore that he would receive them because he would be passing blood via the rectum for about a week and was to use the gauze to clean the area. Opposition, p. 3.

The medicines ordered by Dr. Polidore were not ordered at the prison until January 21, 2005, and apparently only then because Chacon filed an inmate appeal.

When Chacon returned to Pelican Bay from the hospital, the transportation officers gave his paperwork to nurse Edwards. She evaluated Chacon. Chacon was released back to his housing unit, and he was back in his cell that afternoon. Opposition, p. 3.

Chacon states that, when he saw nurse Edwards upon his return from the hospital, he asked her about his medicine, and nurse Edwards told him "not to worry because all that would be taken care of, and to just follow the doctors orders carefully." Id. (error in source). Nurse Edwards states in her declaration:

> All medical documents from his admission at Sutter Coast Hospital were forward to the Emergency Clinic (now the Urgent Care Unit) who were responsible for the blood work and the review of all medical documents and recommendations from the hospital. The Emergency Clinic doctor would then order the medication if he agreed with outside physician. [¶] As a matter of departmental policy, no medication may be dispensed until a staff doctor at Pelican Bay State Prison makes a physician's order for that medication. [¶] An outside doctor's medication order must be reviewed by a staff doctor and approved before that medication can be dispensed.

Edwards Decl., ¶¶ 3-5 (errors in source). Edwards declares that she was unaware that Chacon's

---

[1] Chacon's statements of fact in his opposition brief can be considered as evidence in opposition to the motion for summary judgment because the opposition was made under penalty of perjury. . See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

2

order had not been reviewed by a staff doctor in the emergency room. However, the passive wording in her declaration – wherein she does not state that she sent the documents but instead that they were forwarded – leaves one uncertain as to the particular steps she took to cause the order to be forwarded to the emergency clinic doctor, why she believed the documents went to that doctor, or whether she had any expectation that they would be timely evaluated.

During several of the scheduled inmate medicine distribution sessions over the next couple of days, Chacon asked for and was not given the medicine and gauze that the surgeon had ordered for him, and his complaints of pain were not addressed. The pattern apparently was that the medical technical assistant ("MTA") distributing medicines would tell Chacon he wasn't listed to receive medicine, would promise to look into the matter and/or have a nurse see him, and then (from Chacon's perspective) nothing further would happen.

On the evening of January 19 (i.e., the day of surgery), fellow inmate Fernandez asked MTA Garospe if there was any post-surgery medication for Chacon. MTA Garospe said there was nothing for him. Chacon heard the response and then yelled to Garospe and asked him for his gauze dressing and medication. Garospe did not provide the gauze and said he would write down Chacon's name down so that a nurse could talk to him in the morning. Opposition, p. 4. There is no evidence that Garospe actually did make a note for a nurse or did anything further in response to Chacon's request.

The next morning, Chacon "experienced the same thing with defendant MTA Munoz." Also, Chacon asked Munoz to examine him because he had excessive bleeding and because he was feeling sick. Munoz did not examine him and told him he would check on it later. Chacon "experienced similar situations with both defendants MTA Graham and MTA Pearcy." Opposition, p. 4.

Chacon filled out an inmate appeal form and it was given to a doctor apparently on January 20, 2005. Only then did Chacon receive medicine that evening from MTA Goulter. "However, by that time, the plaintiff was experiencing excessive bleeding from his rectum, feverish symptoms, and excessive pain. The plaintiff asked defendant Goulter to evaluate him so that plaintiff can see a doctor right away. But defendant Goulter just said that the medication

3

1  will make plaintiff feel better, and then walked away." Opposition, p. 5.

2  On January 22, Chacon collapsed. He was taken to the clinic, evaluated by defendant MTA Munoz and then sent to the "C.T.C." for emergency treatment. Dr. Buschof admitted Chacon to the prison hospital and diagnosed him with a "kidney infection and urinary bladder infection with large amounts of blood in his urine and rectum." Opposition, pp. 5-6. He was treated for two days and then was discharged back to his cell on January 24, 2005. On February 12, 2005, he had another kidney infection. Dr. Buschof stated that the second infection was related to the first infection on January 22-24. Id. at 6.

## VENUE AND JURISDICTION

Venue is proper in the Northern District of California because the events or omissions giving rise to the claims occurred at Pelican Bay in Del Norte County, which is located within the Northern District. See 28 U.S.C. §§ 84, 1391(b). This Court has federal question jurisdiction over this action brought under 42 U.S.C. § 1983. See 28 U.S.C. § 1331.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, as is the situation with defendant's challenge to the Eighth Amendment claim,

4

the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Plaintiff's complaint is not verified, but his opposition to the motion for summary judgment is; therefore, the statements of fact in the opposition are considered as evidence in opposition to the motion for summary judgment.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631.

**DISCUSSION**

A.  Motion For Summary Judgment

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 102-04 (1975). To prove that the response of prison officials to a prisoner's medical need was constitutionally deficient, the prisoner must establish (1) a serious medical need and (2) deliberate indifference to that need by prison officials. See McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller,

5

104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id. at 1059 (quoting Estelle, 429 U.S. at 104).  A prison official exhibits deliberate indifference when he or she knows of and disregards a substantial risk of serious harm to inmate health by failing to take reasonable measures to abate it. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he or she must actually draw that inference. Id.

This is an unusual case in that defendants do not really dispute plaintiff's version of what occurred, but instead deny liability on those facts.  The argument for each defendant boils down to "it's not my responsibility," but that argument does not persuade the court under the circumstances.  Even if it was a doctor's duty to "transcribe" the outside surgeon's medication orders into prison records, triable issues of fact exist as to (1) whether the MTA defendants acted with deliberate indifference by failing to make further inquiry when Chacon indicated he was supposed to get medications and they did not have them, (2) whether the MTA defendants acted with deliberate indifference in failing to provide sterile gauze for a bleeding post-surgery inmate, (3) whether the MTA defendants who were asked by Chacon to examine him acted with deliberate indifference in failing to do so.  These same triable issues of fact show that defendant MTAs are not entitled to judgment in their favor on the negligence claim, either.  As to nurse Edwards, there is a triable issue of fact as to whether she acted negligently and with deliberate indifference in her handling of the medication order.   The evidence supports an inference that defendants were informed of a medical need and acted with deliberate indifference and negligence.  The evidence also supports an inference that pain medication, stool softeners, and sterile gauze to keep a surgical site clean were serious medical needs.

Defendants argue that Chacon "would be unable to produce evidence that a PBSP doctor ordered the medication prior to January 19th or the 20th because no such order exist. Therefore plaintiff will be unable to show a genuine issue of material fact to show that defendants were deliberately indifferent to plaintiff's condition by withholding medication." Memorandum of

6

Points And Authorities In Support Of Defendants' Motion For Summary Judgment, p. 3. This assertion is unpersuasive. The undisputed evidence is that Chacon came back from the hospital with written instructions for Motrin and stool softener and oral instructions that he use gauze to clean the surgical area. That these instructions were written by an outside provider rather than a prison doctor did not permit prison staff to simply ignore them. Defendants do not offer evidence as to what nurse Edwards actually did with the information received from the outside surgeon. Her declaration is noticeably vague on this very point, as she does not identify whether it was she or someone else who sent the documents and does not identify the time-frame in which the documents were sent. She was not free to ignore the instructions, and if she knew it would take several days for the outside surgeon's instructions to be put in Pelican Bay's written order system and chose to do nothing about that delay, an inference of deliberate indifference may be drawn by the trier of fact. It would not be uncommon for a surgical outpatient to return with medication orders (especially for pain medications), yet defendants fail to offer proof that a system exists and is followed to be certain that medication orders are promptly implemented or, alternatively, offer proof that post-surgery medication orders are not time-sensitive. As to the MTAs, Chacon's complaint is not only that defendants withheld medications, but that they would not even bother to inquire into the situation to find out whether there was supposed to be medication for him. Their reported refusal or failure to make inquiries after he asked for the medication that he was supposed to be getting creates a triable issue of fact on whether they acted with deliberate indifference and negligence. No MTA defendant offers any evidence as to what steps he took to inquire into why there was an untranscribed order or what medication needs plaintiff had. And the medication orders had nothing to do with the MTAs' refusal to examine Chacon when he complained of bleeding and pain.

Defendants next argue that nurse Edwards cannot be liable on a negligence theory because she did not have a duty to "transcribe" a medication recommendation and that duty lies solely with a physician. Defendants have described the situation too narrowly as her duty to the patient was not simply one of transcription. Chacon returned to prison with discharge instructions and Edwards has not described what she did to cause those to be implemented such

7

1 that this court could find in her favor as a matter of law. The court also notes that there is no
2 evidence from either side that the particular items required a doctor's authorization – in the non-
3 prison world, one would not need a prescription to obtain the items Chacon was instructed to
4 use.

5       Defendants next argue that there were no gauze pads available for the MTAs to distribute.
6 Defendants offer no evidence for the rather remarkable assertion that a medical care unit had no
7 gauze pads or anything that could be used as a substitute.

8       Defendants also disagree with Chacon's theory that his kidney and/or bladder infection
9 was due to the blocked feces in his intestine. They argue that, given his history, it is unlikely
10 that plaintiff even had any feces in his intestine. Defendants' own exhibit is susceptible to the
11 opposite interpretation. See Def. Exh. D (Dr. Buscho's discharge summary states "I obtained a
12 KUB and there were no staples, extensive stool was noted and no foreign body or contraband.")
13 Defendants also argue that Dr. Buscho's "diagnosis, on January 22, 2005, found that plaintiff's
14 infection was caused by his hemorrhoidectomy." Reply, p. 4. The argument overstates the
15 diagnosis, as Dr. Buscho did not write that the former was caused by the latter, but only that the
16 former followed the latter. See Def. Exh. H, p. 2 ("Impression: pyelonephritis following
17 hemorrhoidectomy.") The evidence of causation may be weak on the connection between
18 defendants' actions and the kidney and bladder infection, but the court cannot say defendants are
19 entitled to judgment as a matter of law on the claim.

20       Chacon has established a "'genuine issue for trial'" as to whether defendants acted with
21 deliberate indifference to a serious medical need and negligence. Celotex Corp., 477 U.S. at 324
22 (quoting Fed. R. Civ. P. 56(e)). Summary judgment therefore is not appropriate. Defendants'
23 motion for summary judgment will be denied.

25 B.    <u>Referral To Mediation Program</u>

26       The court referred this case to the <u>Pro</u> <u>Se</u> Prisoner Mediation Program on May 7, 2008,
27 and then withdrew the referral on May 15, 2008, when the defendants indicated a desire to file
28 a motion for summary judgment. In light of the resolution of the summary judgment motion,

8

it appears that a new referral to the mediation program is appropriate.

Good cause appearing therefor, this case is now referred to Magistrate Judge Vadas for mediation proceedings pursuant to the Pro Se Prisoner Mediation Program. The proceedings will take place within **ninety days** of the date this order is filed. Magistrate Judge Vadas will coordinate a time and date for a mediation proceeding with all interested parties and/or their representatives and, within **five days** after the conclusion of the mediation proceedings, file with the court a report for the prisoner mediation proceedings.

The court encourages the parties to consider resolving this case before trial and points out that the summary judgment briefing shows that both sides have weaknesses. On the one hand, plaintiff may have a serious causation problem, i.e., it may be difficult for him to prove that any defendants' actions caused or contributed to the infections he experienced. The medicines he was not given (i.e., Motrin and stool softeners) do not appear to be of the infection-fighting sort. If he cannot prove that connection, the value of his claim would diminish greatly, as it might be about the value of two days of the discomfort from not having stool softeners and Motrin. On the other hand, the defense has a serious problem in that the evidence now in the record shows a striking failure to take steps to respond to an inmate's medical requests, which is especially noteworthy for an inmate who had just had surgery.

C.      Scheduling Matters

The court earlier had set a pretrial date of September 8, and a trial date of September 9, 2008. Due to a scheduling conflict, the court now vacates those dates and resets them as follows: The pretrial conference will be held at **10:00 a.m.** on **Monday, December 15, 2008**. The bench trial will commence at **8:30 a.m.** on **Tuesday, December 16, 2008**.

Two trial-related matters also need to be addressed before December. No later than **September 30, 2008**, plaintiff needs to file with the court and serve on defense counsel a written notice in which he provides the following information. First, plaintiff needs to state the date on which he expects to be released from prison. The court wants this information to determine whether the trial should be changed to a time when he is not in prison, as it is easier to have a

9

trial without an incarcerated plaintiff. Second, if plaintiff wants to have witnesses other than himself testify at trial, he must send to the court a proposed witness list in which he lists any witnesses he needs to have the court's assistance in bringing to trial. (He will need the court's assistance because the court must issue a writ of habeas corpus ad testificandum for a prisoner-witness and may need to issue a subpoena for a non-prisoner witness.) The court will not issue writs or have subpoenas served unless plaintiff submits a proposed witness list in which he explains where each witness is located and what each witness is expected to testify about so that the court can determine whether each proposed witness is necessary. Plaintiff is reminded that, for each non-prisoner witness who is not willing to show up voluntarily, plaintiff needs to subpoena the witness and must pay to that witness a witness fee of $40.00 and travel expenses. See 28 U.S.C. § 1821(b) & (c).

## CONCLUSION

Defendants' motion for summary judgment is DENIED. (Docket # 41.

The case is referred to Magistrate Judge Vadas for mediation proceedings pursuant to the Pro Se Prisoner Mediation Program. The clerk will send to Magistrate Judge Vadas in Eureka, California, a copy of the case file for this action.

The pretrial conference will be held at **10:00 a.m.** on **Monday, December 15, 2008.** The bench trial will commence at **8:30 a.m.** on **Tuesday, December 16, 2008**.

IT IS SO ORDERED.

Dated: July 25, 2008

_____
SUSAN ILLSTON
United States District Judge